25CA0178 Peo in Interest of JFJ 06-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0178
City and County of Denver Juvenile Court No. 20JV1221
Honorable Lisa Gomez, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.F.J., a Child,

and Concerning J.J.F.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE MEIRINK
Freyre and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

---

Katie McLoughlin, Acting City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1    J.J.F. (mother) appeals the judgment terminating her parent-child legal relationship with J.F.J. (the child).  We affirm.

## I.    Background

¶ 2    The Denver Department of Human Services filed a petition in dependency or neglect because the then-five-month-old child suffered serious bodily injury as a result of suspected physical abuse by mother's boyfriend.  The petition included the child's older sister, A.G.  The Department placed both children with maternal grandmother where they remained for the duration of the case.

¶ 3    The juvenile court adjudicated both children dependent and neglected and adopted a treatment plan for mother.  The Department subsequently moved to terminate mother's parental rights as to J.F.J.  Following a hearing held over four years after the case opened, the juvenile court granted the motion and terminated mother's parental rights.

## II.    Less Drastic Alternatives

¶ 4    Mother contends that the juvenile court erred by finding that there were no less drastic alternatives to termination, such as an allocation of parental responsibilities (APR) to maternal grandmother.  We disagree.

### A. Standard of Review and Applicable Law

¶ 5 We review a juvenile court's findings regarding less drastic alternatives for clear error. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶¶ 15, 44. It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

¶ 6 A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the conduct or condition of the parent is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 7 Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of L.M.*, 2018 COA 57M, ¶ 24. In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3); *see L.M.*, ¶ 29.

¶ 8     For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child.  *A.M.*, ¶ 27.  If the court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination.  *Id.* at ¶ 32.

¶ 9     In deciding whether a relative placement is a viable less drastic alternative to termination, a juvenile court may consider, among other things, (1) whether an ongoing relationship with the parent would benefit the child, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38; and (2) whether the caregiver favors adoption over an APR, *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011).

¶ 10    Additionally, when a child is under six years old, as here, the juvenile court must consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible.  *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024.

## B. Analysis

¶ 11 Mother argues that an APR would have been appropriate because she maintained a strong bond with the child throughout the case. But the juvenile court found that there were no less drastic alternatives to termination, in part because mother's lack of protective capacity presented significant child safety concerns. Additionally, the court found that the child needed permanency because this case had been open "way beyond the guidelines anticipated by the [EPP] statute." The record supports the court's findings.

¶ 12 The child had multiple fractures, bruising, and a hematoma resulting from the incident that started the proceeding. The caseworker testified that the injuries were so severe that the child was "in a cast and harness [for] weeks after." When the caseworker discussed the injuries with mother, she claimed it was a "freak accident" and "she would always defend [her boyfriend]."

¶ 13 While this case was pending, mother married her boyfriend and had two children with him. Nearly four years after the case opened, mother's youngest child died as a result of injuries suffered because of suspected abuse by mother's now husband. The

injuries included facial bruising and multiple fractures. Mother again claimed that the injuries and resulting death were a "freak accident" and that she and her husband "would remain a family." The caseworker opined that mother lacked the capacity to be a protective parent and that she could not put the child's needs above her own or her husband's.

¶ 14    Mother next argues that although maternal grandmother did not testify at the termination hearing, she "made clear in earlier proceedings that she would accept an APR." But the record shows that at this earlier proceeding, when the juvenile court inquired whether maternal grandmother would consider an APR, she responded "yes" but then said "I would love to adopt [if] the Court allows that" but "if the court does not allow that" then she would consider an APR. And mother concedes in her opening brief that maternal grandmother "preferred to adopt the children, but she would accept an APR." Additionally, the caseworker testified that mother and maternal grandmother "had a pretty tumultuous . . . relationship" and that they did not have consistent contact. Notably, when mother was asked about her desired outcome during

the termination hearing, she testified that she wanted the child to be adopted by maternal grandmother.

¶ 15    Ultimately, the caseworker opined that an APR would not be in the child's best interest and that the child needed to be adopted because he deserved permanency. In doing so, the caseworker noted that the case was outside of the EPP provisions, and the child was five months old when the case opened and over four and a half years old on the date of the termination hearing.

¶ 16    Finally, mother argues that the juvenile court demonstrated that there was a less drastic alternative to termination when it accepted a stipulated APR for the child's sister, who "was in the same position" as this child. But the juvenile court found that the children were differently situated because the children had different fathers and the Indian Child Welfare Act (ICWA) of 1978, 25 U.S.C. §§ 1901-1963, which requires a higher burden of proof for termination, applied to sister due to her father's tribal heritage. *See People in Interest of K.C. v. K.C.*, 2021 CO 33, ¶ 26 (prior to terminating parental rights in an ICWA case, a court must hear expert testimony and make findings beyond a reasonable doubt as

opposed to by clear and convincing evidence as in non-ICWA proceedings).

¶ 17    At the beginning of the termination hearing, the court accepted a stipulated APR for the child's sister, which involved placement with maternal grandmother. The guardian ad litem (GAL) told the court that she did not believe an APR was in the sister's best interest. Nonetheless, the GAL agreed to the stipulated APR because she "recognize[d] the burden of proof in an ICWA case, and [she] recognize[d] that the tribe is not going to agree . . . to a termination, no matter what the facts are." During the termination hearing, the caseworker testified that had the sister's case not been an ICWA case, she would have recommended termination. Furthermore, the court noted that had the case proceeded to a hearing, there was a "strong likelihood" termination would have been granted as to the sister.

¶ 18    Ultimately, the record supports the juvenile court's conclusion that there were no less drastic alternatives to termination. Because the record supports the court's findings, we must affirm its judgment. *See People in Interest of B.H.*, 2021 CO 39, ¶ 81.

### III.   Disposition

¶ 19     We affirm the judgment.

JUDGE FREYRE and JUDGE GOMEZ concur.